On the 4th day of July, 1809, the plaintiffs in error preferred a petition to the County Court of Rutherford, setting forth in substance, that their father, in his lifetime, made two entries, each for six hundred and forty acres of land, on the waters of Stone's River, which was surveyed by John Buchannon; that the plats and certificates of said surveys were forwarded to the secretary of North Carolina for the purpose of obtaining grants; but that in making out said grants by the secretary a mistake was made, so that the grants for each tract covered the same land; that the calls in one of the grants, viz., grant No. 246, were erroneous, inasmuch as they did not conform to the survey which had been actually made: that the survey was made to begin "at a sugar-tree, being the southeast corner of John Foreman's pre-emption; running thence north with Foreman's line, three hundred and twenty poles, to a hickory, crossing a branch on Stone's River; thence east 320 poles to an elm, crossing the aforesaid branch; thence south 320 poles to a stake; thence west 320 poles to the beginning;" that the calls in the said grant, No. 246, are "beginning at an ash and elm, being the northeast corner to a survey made in the name of Thomas Cotton; thence east, crossing a branch of Stone's River, 320 poles, to a white oak; thence south 320 poles to a stake; thence west 320 poles to the corner of his other survey; thence north, with said line, to the beginning;" which were precisely the calls in grant No. 2,512, which issued upon the other survey. *Page 2 
The petition also stated, that the mistake was made by the secretary of North Carolina, without any fault on their part, or on the part of their father, from whom they derived title. It was, therefore, prayed that such an alteration should be made in the calls of the grants as would make them conform to the survey.
A notice preparatory to this petition was served upon the defendants in error.
Upon a trial of this cause in the County Court the prayer of the petitioners was granted; from which opinion the defendants prayed and obtained an appeal to the Circuit Court of the same county; by whom the opinion of the County Court was reversed, and a judgment given, dismissing the petition; to reverse which the plaintiffs prayed a writ of error to this Court.
To the opinion of the Circuit Court, dismissing the petition, the plaintiffs filed a bill of exceptions, stating that "in support of the allegations set forth in said petition, the petitioners introduced as evidence two grants on military warrants, the numbers of which grants are 246 and 2,512, with plats of survey annexed." [Here follows grant No. 246, and the certificate of survey, both of which specify the same lines and boundaries; and grant No. 2,512, with the certificate of survey also annexed, which also correspond.] The petitioners also introduced in evidence, copies of two entries on warrants No. 723 and 874, as follows: "Thomas Cotton enters six hundred and forty acres of land, adjoining on the east of John Foreman's pre-emption, which includes Mill Creek Lick; running east, and down a branch of Stone's River for complement — No. warrant 723, August 5, 1784." "Thomas Cotton, assignee of James Smith, 640 acres lying on the waters of Stone's River, on the second big creek in the Cedars, adjoining his other survey on the east side, and running down the creek, on both sides for complement — No. warrant 874, August 5, 1784." A plat of survey, showing the situation of Foreman's claim, called for in Cotton's entry No. 723, with the two adjoining tracts to the east, was also given in evidence. It was also shown by John Buchannon, the surveyor of the two tracts *Page 3 
of Cotton, lying on the east of Foreman's tract, and James Mulherron, that a survey was actually made on the 22d day of April, 1785, for Thomas Cotton, to adjoin said Foreman's claim on the east, as the tract appears in said plat. It was also given in evidence that immediately after the said survey was actually made, he returned a duplicate plat of survey to Martin Armstrong's office, and deposited the same there; and also returned and deposited, as aforesaid, other duplicate plats to adjoin said plats of Cotton still to the east. Buchannon further stated, that about the year 1795 Cotton came to him and informed him that he had never got or obtained a grant upon one of the surveys, so made as aforesaid; and brought a memorandum, in the handwriting of Martin Armstrong, the surveyor-general, showing the courses of one of the said tracts, for which a grant had not issued to Cotton; and requested the said Buchannon to make him out duplicate plats by those notes, so that he might obtain a grant. Upon which Buchannon proceeded to make duplicate plats by those notes, and gave the duplicates to said Cotton, to be deposited with the surveyor-general; and that one of those duplicate plats is the one now produced and annexed to grant No. 2,512, from which he concludes that the surveyor, in making out the notes, gave Cotton the notes of the survey upon which a grant had already issued. The defendants gave in evidence a grant to James Hord, under whom they claim, as well as the entry upon which it is founded. After this testimony had been heard, it was objected, that the plaintiffs' petition did not state sufficient allegations to entitle them to the benefit of the prayer in said petition, of which opinion was the Court, c.
This case was commenced by filing a petition in the County Court of Rutherford; in which petition it is alleged that the father of the petitioners made two entries in the year 1784 in the surveyor's office; that these entries adjoined each other; that *Page 4 
in the year 1785 a deputy surveyor surveyed the tracts by virtue of these entries; that he made out plats and certificates of each survey, and returned them to the office of the surveyor-general; that in making out the grants the secretary of North Carolina committed an error in grant No. 246, dated in the year 1786, and has made it to cover the same land which is included in grant No. 2,512, dated in 1795, when it ought to have covered the adjoining tract, upon which the entry and survey had been made; and the prayer is, that it may be so corrected that it may cover the land upon which the survey was actually made. After the decision of the case in the County Court, it was taken to the Circuit Court by way of appeal. Upon the hearing in the Circuit Court the petition was dismissed; to which decision a bill of exceptions was taken, and the cause removed to this Court by writ of error.
Upon looking into the bill of exceptions there is nothing found which says whether there was any proof that the petitioners are the heirs of the grantee or not; but it is found that the petitioners produced copies of the two entries made in the name of Thomas Cotton; the two grants mentioned in the petition; the plats and certificates of survey upon which the two grants issued; and proved by the testimony of Buchannon and Mulherron that Cotton's two surveys were made in conformity to his entries. And Buchannon's testimony shows that the surveyor, in making out the plats and certificates upon which the grants issued, made a mistake; in consequence of which the grant No. 2,512, dated in 1795, was issued by the secretary for the same land described in grant No. 246, dated in the year 1786. Upon this state of the case it has been argued by the plaintiffs' counsel that this Court must believe that proof was made that the plaintiffs are the heirs of the grantee; and that a mistake has been committed, of which the defendants had notice, without the correction of which the plaintiffs will be very much injured. That although the petition is informal, yet it sufficiently appears by it that an error has been committed to the prejudice *Page 5 
of the petitioners, and that the case ought not to be lost by reason of an informal statement; and to support this, they rely upon Hay. Rev. 145, 200; Acts of 1809, ch. 49, sec. 21; 2 Ch. Rep. 3.
On behalf of the defendants' counsel it has been insisted that the decision of the Circuit Court ought to be affirmed on three grounds.
1. The record does not show any proof that the petitioners are the heirs of Thomas Cotton.
2. The petition complains of an error in grant No. 246, and the proof shows the error in the grant No. 2,512.
3. The petition alleges the secretary committed the mistake, and the proof shows that any error that was committed must have been committed by the surveyor.
These objections are not to the form of the petition, but to the merits of the case. The facts are well enough stated; but the proof does not establish them.
To determine this cause it is not thought necessary to give any opinion on the first point made by the defendants' counsel. In cases where pleadings are made up by the respective parties, and by their own acts they have selected the points upon which the dispute is rested, all other points, it is believed, stand admitted. In this case the defendants were not bound to make, nor have they made, any formal or written defence; and perhaps it may be doubted whether this rule will affect it. As there are other points upon which no hesitation is felt, this one is left without any decision.
Upon the 2d and 3d points no difficulty is experienced. The petition explicitly states that the error was committed in issuing grant No. 246. The proof makes it evident that the error committed is in grant No. 2,512.
The petition alleges that the secretary made the mistake; the proof shows that the surveyor made the mistake.
By referring to the act of Assembly upon which this petition is filed, it is conceived the case will appear clear of doubt. It is in Haywood's Revisal, *Page 6 
224, sec. 1, and is in these words: "That whenever there has been, or hereafter may be, an error by the surveyor in plotting or making out certificates to the secretary's office, or the secretary shall mistake in making out the courses, agreeable to the said returns, or shall misname the claimant, or otherwise, so as such claimant shall be injured thereby, the claimant so injured shall prefer a petition to the county court of Pleas and Quarter Sessions where said land is situated, setting forth the injury he, she, or they might sustain in consequence of such error or mistake, with all and singular the matters and things relative thereto. And the said courts are hereby authorized to hear testimony respecting the truth of the allegations set forth in said petition; and if it shall appear to them, by said testimony, or from the return of the surveyor, or error of the secretary, that the patentee of such lands is liable to injury thereby, such court is hereby required to direct their clerk to certify such facts as appears to their satisfaction."
The first point in this section points out the officers, to wit, surveyor and secretary, whose mistakes may be corrected. It next specifies some of the mistakes which may be amended; and then shows what the claimant must do to obtain redress, viz.:file his petition, and therein set forth the injury, with all and singular the matters and things relative thereto. It then vests the Court with their powers, and points out their duties; to wit: They are to hear testimony respecting the truth of the allegations set forth in said petition and direct their clerk to certify such facts as appears to their satisfaction.
The petition ought to contain a plain statement of the facts as they exist. It ought to show by what officer the mistake was committed, in what grant the error exists, and how the party is liable to be injured. If the facts are stated correctly in substance the form would be unimportant.
How stands this case? The party alleges the error to exist in one grant; he proves it to be in another. He alleges the error to have been committed by one officer, and proves that it was committed by another. *Page 7 
If a party could be relieved in such a case the Legislature had better say, There need not be any petition. In that case there would be nothing stated to mislead the Court or the defendant; but in this case, in place of pointing the attention of the Court or the adverse party to the facts to be inquired into, the petition directs them to others. The Court have no power to hear testimony upon any allegation not contained in the petition. They have no power to direct their clerk to certify any fact not stated in the petition; and yet we are asked to do both.
In all cases, both in law and equity, the decision ought to be upon the proofs compared with the allegations. The act of Assembly which authorizes the Court to examine and give redress, in a summary way, ought to be confined to cases fairly within it; and the proceedings in those cases ought, in substance, to conform to the provisions of the act.
Williams, J. concurred.