[PHILADELPHIA, APRIL 3D, 1841.]


VAUGHAN and Others *against* BARCLAY.

EQUITY.


1. This court has jurisdiction of a bill brought to compel the conveyance, by a trustee residing within the state, of the outstanding legal estate in lands situate in other states.

2. In 1795, R. M. and others conveyed to J. N. and J. B., certain lands in Virginia, Kentucky, North Carolina, South Carolina, and Georgia, in trust for the shareholders of an association called "The North American Land Company." In 1807, a majority of the shareholders resolved, that J. N. and J. B., the trustees, should convey to certain persons named, for the purposes of sale, &c., and on making such conveyance should be held harmless and blameless for any acts, &c. In 1808, J. N. conveyed all his estate in the land pursuant to the agreement; but J. B. refused to convey, and died in 1816, having survived J. N.; and leaving as his heir at law J. M. B.; who on being applied to, refused to convey, alleging that he did not know how far the trust had been accepted and acted upon; that he had never accepted the trust; and that he had by an instrument under seal, which was recorded, renounced the trust and declared that he would not intermeddle with it. On a bill against J. M. B. to compel the conveyance of the legal estate, there being some evidence that J. B. accepted the trust, a decree for a conveyance was made.


THIS was a suit in equity, instituted by John Vaughan, Robert Porter, James Dundas, Henry Nixon and Benjamin Kugler, as managers of "The North American Land Company," against John M. Barclay.

The bill set forth, that by certain articles of agreement, dated the 20th of February, 1795, between Robert Morris, John Nicholson, James Greenleaf, and those who should become purchasers of shares in the North American Land Company, an association was formed, styled the North American Land Company.

That the stock of the said company consisted of six millions of acres of land in Pennsylvania, Virginia, Kentucky, North Carolina, South Carolina and Georgia, the titles to which were to be vested in Thomas Willing, John Nixon and John Barclay, *in trust*, to convey the same according to the said articles of agreement.

That on the 5th of March, 1795, Robert Morris, John Nicholson, and James Greenleaf, by five several deeds, conveyed unto the said

Thomas Willing, John Nixon, and John Barclay, and to the survivors or survivor of them, and to the heirs of such survivor, large bodies of land in Virginia, Kentucky, North Carolina, South Carolina, and Georgia, *in trust*, to hold the same agreeably to the said articles of agreement.

That Thomas Willing refused to accept the said trusts; but that they were accepted by John Nixon and John Barclay.

That by the 28th article of the agreement establishing the company, above referred to, it was provided, that in case it should be found necessary to alter the said articles, the same might be done on certain conditions therein stated.

That in conformity with the provisions of the said 28th article, it was agreed by a constitutional majority of the shareholders in the said company, representing 17,132 shares, at their annual meeting on the 31st of December, 1807, as follows:

" 1st. That all the business and concerns of the North American Land Company shall hence forward be managed and conducted by Henry Pratt, John Ashley, John Vaughan, Robert Porter, and John Miller, Jr., their survivors, or a majority of such survivors, who shall have full, unlimited, and uncontrolled powers to barter, sell, or convey all or any part of the land or property of the said company, on whatever terms and conditions they may judge fit; and also to act in all possible cases regarding the affairs of the company, as they may deem most expedient and proper."

2. " That John Nixon and John Barclay, the trustees of the company, shall have power to transfer or convey, and shall transfer and convey to the said Henry Pratt, John Ashley, John Vaughan, Robert Porter, and John Miller, Jr., as aforesaid, by deed or quit claim, or other competent conveyance, all the lands and property of the company vested in them, either in law or equity, for the benefit of the company, and also all shares of stock of the company that may have been transferred to them, or in their names, under the 23d article of the agreement aforesaid. And that the said John Nixon and John Barclay shall on making such competent conveyances or transfers, forever after be held harmless and blameless for any and all neglects or pretended neglects, and for any and all doings which may have happened or occurred while they were considered the trustees of the company."

That on the 27th of April, 1808, John Nixon in pursuance of the articles of agreement, establishing the company, and of the above stated amendments thereto, and reciting the same, conveyed to the said Henry Pratt, John Ashley, John Vaughan, Robert Porter and John Miller, Jr., and their heirs as joint-tenants, and not as tenants in common, all his estate in the lands aforesaid, *in trust* for the said company, agreeably to the said articles of agreement, and the above recited amendments thereto.

That John Vaughan and Robert Porter, then surviving Henry

Pratt, John Ashley and John Miller, Jr., on the 30th April, 1838, conveyed all the lands aforesaid, unto Benjamin Tilghman, in trust to reconvey to the complainants.

That on the 1st May, 1838, Benjamin Tilghman conveyed the said lands to the complainants, and the survivors and survivor of them, in. trust, for the same uses as the said John Vaughan and Robert Porter had, and held the same.

That the said John Barclay refused to convey the said lands to the said Henry Pratt and others, in pursuance of the above stated articles of agreement and amendments thereto.

That the said John Barclay died on or about the 8th of August, 1816, having survived the said John Nixon.

That John M. Barclay is the eldest son and heir at law of the said John Barclay, and that upon him as such, the said trust descended.

That the complainants had requested the said John M. Barclay to convey to them the estates so held in trust by him, according to the above stated articles of agreement, and amendments thereto, but that the said J. M. Barclay had refused so to convey to the complainants; alleging as a reason for such refusal, that he did not know how far the trust was accepted and acted upon; that he had never accepted the trust; and that by an instrument under seal, dated 9th April, 1832, he had renounced the trust, and declared that he had not, and would not intermeddle with the same; whereas the complainants expressly charged the contrary, and averred that the trust was cast upon the said John M. Barclay by act of law.

That the declaration of the 9th of April, 1832, was made without their consent, and that notwithstanding the same, it was and is the duty of the said John M. Barclay to convey to them the said legal estate, according to the draft of a certain deed by them prepared for that purpose, and of which a copy was annexed; to execute which conveyance, or any other conveyance of the said legal estate, the said John M. Barclay had refused.

That such refusal worked manifest injury to the complainants, by preventing them from conveying a legal title to the lands, and supporting suits therefor, and was contrary to equity and good conscience.

The bill then prayed relief, &c.

The answer stated that the respondent had understood there was an association styled the North American Land Company, in which the late Robert Morris, John Nicholson and James Greenleaf were interested; but, that he had no knowledge of the articles of agreement of 20th February, 1795, mentioned in the bill, and neither admitted nor denied the same, but prayed that, if material to his interest, they might be proved by the complainants.

That he had no knowledge whether the capital stock of the com-

(Vaughan *v.* Barclay.)

pany was to consist of such bodies of land, and to be vested in trustees in such manner, as was mentioned in the bill; and neither admitted nor denied the same; but prayed that, if material to his interest, the same might be proved.

That he had understood and believed that there was some conveyance made by the said R. Morris, J. Nicholson and J. Greenleaf, to the said Thomas Willing, John Nixon and John Barclay.

That he believed and admitted that Thomas Willing refused the trust, and that John Nixon accepted the same.

That he had no knowledge of the transactions of the shareholders of the said company, and neither admitted nor denied the same; but prayed that, if at all material to his interest, the same might be proved.

That he admitted the conveyance of the 27th of April, 1808, from John Nixon to Henry Pratt, John Ashley, John Vaughan, Robert Porter and John Miller, Jr.; the deaths of Henry Pratt, John Ashley and John Miller, Jr.; the conveyance of the 30th of April, 1838, from John Vaughan and Robert Porter to B. Tilghman; and the conveyance of 1st May, 1838, from B. Tilghman to the complainants, as stated in the bill.

That he further admitted that John Barclay never made any conveyance to the said Henry Pratt, John Ashley, John Vaughan, Robert Porter and John Miller, Jr., or either of them.

That he admitted the deaths of the said John Nixon and John Barclay as stated in the bill; and that he is the eldest son of the said John Barclay.

The answer further stated, that in 1818 or 1819, the respondent was called upon by the said Henry Pratt and James Greenleaf, when they stated to the respondent that they wished him to convey the trust property which, they alleged, had vested in the respondent as heir at law of his father, the said John Barclay, to the said Henry Pratt, and some other persons whose names the respondent did not recollect, but who were stated to be managers of the said North American Land Company; that the respondent having consulted counsel, agreed to make a conveyance of any trust or property that might have vested in him, to the said Henry Pratt and the other persons stated to be the managers of the said North American Land Company, provided the said Henry Pratt and the other persons to whom the respondent was requested to make the said conveyance, would contract and agree to save and keep the respondent harmless and indemnified, for and on account of the said conveyance; with which request the said Henry Pratt refused to comply; nor was any indemnity offered by any other person.

The respondent further alleged, that it was unknown to him how far the said trust was accepted and acted upon; and that he had never accepted, assumed or undertaken the trust or any part thereof.

He further averred, that in 1832 he was called upon by Henry J.

(Vaughan *v.* Barclay.)

Williams, Esq., to know whether he would act as trustee in the premises; that he continued to refuse to act as trustee, and in order that all persons might know that he had never accepted or assumed the trust, he, at the instance of Mr. Williams and by advice of counsel, on the 9th April, 1832, executed the declaration mentioned in the bill, whereby he declared and made known, that he had never accepted the trust; and that he continued to renounce the same and would not intermeddle with the same, or with the estate conveyed by the deeds creating the trust.

That having caused this declaration to be duly recorded at Philadelphia, he had declined to execute the proposed conveyance to the complainants, mentioned in the bill, being advised by his counsel that he was not required so to do.

The report of the Examiner to whom a reference was directed "to take proof of the exhibits and facts in the case," set forth, that on behalf of the complainants, "due and satisfactory proof and exhibit" was made of the original articles of agreement, dated 20th February, 1795; of the deed of 5th March, 1795, from Morris and wife, Nicholson and wife, and Greenleaf, to Thomas Willing, John Nixon, and John Barclay, for divers lands in Virginia; of the deed of 9th March, 1795, from the same to the same, for divers lands in North Carolina; of the deed of the 5th March, 1795, from the same to the same, for divers lands in South Carolina; of the deed of same date, and from the same to the same, for divers lands in Georgia; of an exemplification of a deed of same date, and from the same to the same, for divers lands in Kentucky, as the said articles and deeds are severally set forth in the copies annexed to the bill; and lastly, that due and satisfactory proof and exhibit was made of "the original record book and book of minutes of the said North American Land Company, containing, among other things, records of resolutions and proceedings at the annual meetings of the said company, on the 31st days of December, 1806 and 1807; containing the preamble and resolutions as set forth in the said bill."

The cause now came on to be heard upon the bill, answer, and the report of the examiner.

Mr. *W. M. Tilghman*, for the complainants.

As it is intimated by the counsel on the other side that the jurisdiction of the court over this case will be questioned, the authorities on that point will be first cited.

By the act of 16th June, 1836, sec. 13, (*Purdon*, 237,) this court is vested with "the jurisdiction and powers of a court of chancery, so far as relates to the *control*, removal, and discharge of trustees." The compelling a trustee to discharge a plain trust, is clearly a case within the operation of the word "control." The lands here sought

(Vaughan *v.* Barclay.)

to be conveyed are without the jurisdiction of the court; but it is well settled by numerous authorities, that a court of chancery having jurisdiction over the *person* of a trustee, may decree the conveyance by him of trust property lying *without* its jurisdiction. *Kildare* v. *Eustace,* (1 *Vernon,* 419.) *Arglasse* v. *Muschamp,* (1 *Vern.* 75.) *Penn* v. *Lord Baltimore,* (1 *Vesey,* 444.) *Nabob of Arcot* v. *E. India Company,* (1 *Ves. Jr.* 385.) *Lord Cranstown* v. *Johnstown,* (3 *Vesey, Jr.* 170.) *Exparte Prosser,* (2 *Bro. Ch. R.* 325.) *Massie* v. *Watts,* (6 *Cranch,* 158.) *Mitchell* v. *Bunce,* (2 *Paige's Ch. R.* 606.)

From the admissions and proofs it appears that the complainants represent the *cestui que trusts* of the trust created by the deeds of the 5th and 9th March, 1795.

By the terms of the instruments creating the trust, as well as by the ordinary rule of equity, they have the right to call upon their trustee to convey the legal estate. Is the respondent such trustee? We say he is.

1. The legal estate was in John Barclay at the time of his death. This is charged by the bill and not denied by the answer, which merely alleges that it is *unknown* to the respondent how far the trust was accepted and acted upon.

In the absence of proof, the presumption is that a trustee does accept the trust. *Wilt* v. *Franklin,* (1 *Binn.* 502.) *Lewin on Trustees,* 114, 118. The respondent's offer to convey in 1818, goes far to show a previous acceptance by his father.

2. John Barclay then having accepted the trust, and having survived his co-trustee John Nixon, such portion of the legal estate as did not pass by the conveyance of the latter on the 27th of April, 1808, vested in him alone; and on his death in 1816, descended upon his heir at law, the respondent.

3. The legal estate being thus shown to have been vested in the respondent in 1816, the question arises whether it has been divested by the renunciation executed by him on the 9th of April, 1832.

It is well settled that where a party has once accepted a trust, either in fact, or by operation of law, he cannot afterwards discharge himself from it by a simple renunciation. *Lewin on Trustees,* 132, 133. *Doyle* v. *Blake,* (2 *Sch. & Lef.* 245.) *Chalmer* v. *Bradley,* (1 *Jac. & Walker,* 68.) 4 *Johns. Ch.* 138.

[Mr. *T.* was here informed by the court that he need not press this point.]

If then, as has been shown, the legal estate was in the respondent, and it be conceded that his renunciation was nugatory, he is still trustee, and the complainants are entitled to a decree.

Mr. *Meredith,* for the respondent.

1. The representatives of Morris, Nicholson and Greenleaf, should be made parties to the bill. It does not appear upon the face of the

(Vaughan *v.* Barclay.)

deeds creating the trust, that any shareholders in the North American Land Company are in existence, nor is there any proof of the fact, except that which may have been afforded by the production of the alleged company's books before the master. Upon this point the representatives of the grantors have a right to be heard; for in case no such shareholders exist, there is a resulting trust in favour of those representatives. If this were a trust created by a will, the heir at law would certainly be made a party.

2. The next question is, whether this court will decree a conveyance of lands *without* its jurisdiction. It is said that full chancery jurisdiction over the subject-matter is given by the 13th section of the act of 16th June, 1836. But we apprehend that the act of 22d March, 1825, (*Purd.* 998-9,) establishes the system which has prevailed in Pennsylvania, according to which when a new trustee is to be appointed, it is done by decree only, without a conveyance from the party. Now if this conveyance be made by the respondent, on his being found within the jurisdiction of the courts in the states where the lands lie, they might compel him to convey over again, and he might be exposed to serious inconvenience.

In all the English cases cited, where a conveyance has been decreed of lands out of England, it has been where the lands were in a subordinate jurisdiction—as in the colonies, or in Ireland; but we ask to be shown a decree of conveyance of lands in France, or other foreign country, as that alone would be a case analogous to the present.

3. The respondent has never acted in the trust, and no one is ever compelled to undertake a trust. *Lewin on Trustees,* 525. The acceptance of John Barclay does not sufficiently appear, for though alleged in the bill, and not denied by the answer, the fact should be proved. This is the more important as being (after what has been intimated by the court) the point on which the whole case will probably turn; for if the trust did vest in John Barclay, it must be admitted that it descended upon the respondent, and he cannot avoid executing it.

Mr. *B. Tilghman* in reply.

1. As to the necessity of making Morris, Nicholson and Greenleaf's representatives, parties to the bill, we reply, that they can have no interest, being estopped by the conveyances creating the trust. We have shown that their conveyances became fully operative, and that the North American Land Company existed, by showing the acts of more than two-thirds of the stockholders of that company, representing 17,132 shares of its stock, in 1806 and 1807. This proof furnished by the Examiner's Report has not been, and could not be, excepted to, and the facts are of course to be taken as true. The company thus existing, and having paid for the lands in question, are the only parties beneficially interested, and there is, of course, no

(Vaughan *v.* Barclay.)

resulting trust in favour of the heirs of Morris or the other grantors. This also appears by the fact that Greenleaf, one of the grantors, in 1818 requested the respondent to convey, according to the resolutions of the company mentioned in the bill.

2. As to the jurisdiction of the court. If the act of 1836 was not intended to enlarge the power conferred upon this court by the act of 1825, why was it made at all? The word " control," in the act of 1836, is of most extensive signification; and as applied to a trustee, will at least reach the ordinary case of compelling him to execute a clear and undisputed trust.

As to the inconvenience which the respondent might suffer from making this conveyance, by being made amenable to the courts of other states, the decree of this court would surely be his protection. The English authorities are not confined to cases of lands in subordinate jurisdictions. In *Lord Cranston* v. *Johnston*, (3 *Vesey Jr.* 170,) the case of lands in a " foreign country," as distinguished from the " British dominions," is expressly stated by the court to be included in the general rule. See also 2d *Paige*, 606, before cited.

3. There is ample proof of the acceptance of the trust by John Barclay. Thomas Willing renounced at once in writing. In 1808, when John Nixon and John Barclay are called upon to convey, Nixon conveys, and Barclay refuses to convey. This refusal is an act under the trust. If he had not accepted, or if he had disclaimed the trust, he should then have said so. The admission by the respondent of his willingness to convey, in 1818, is an admission that the trust was then in him, which could not have been unless it had been accepted by his father. Then the presumption of law is, that a trustee accepts. Any ambiguity in his conduct will create such presumption.

The opinion of the court was delivered by

GIBSON, C. J.—All the unconfessed parts of the bill are directly proved but the acceptance of the trust by the respondent's ancestor. To supply the evidence of that, recourse is had to the doctrine of implied acceptance, which, however, is applicable only to a conveyance of the beneficial interest, and not to the conveyance of a dry title loaded with a trust. But is not presumptive evidence of acceptances afforded, in this instance, by the circumstances and nature of the case? The deed to the original trustees was executed in 1795, and Mr. Barclay, being requested, in 1808, to join in a conveyance to new trustees designated in an amendment of the original articles, does what? Denies that he had accepted the trust? No such matter. He refuses to convey without assigning any reason for it that we perceive; and had he not accepted the trust before, every principle of duty would have called on him to disclaim it then. That he had left the company thirteen years, under a belief that he was

(Vaughan *v.* Barclay.)

one of its trustees, is evident from its call on him to discharge himself of the imputed trust; and the existence of such a belief, undisturbed by one who could have been no stranger to it, is evidence to charge him.    From the very course of such matters, a presumption arises that the deed was presented to him, as it was to Mr. Nixon and Mr. Willing, in order to complete the execution of it by deli-.very; and as he expressly accepted it, or expressly rejected it then, the company could have been under no misapprehension of the state of the fact; and if it knew that he had rejected it, why call on him for a conveyance in 1807, or why this bill?    There is, then, at least a spark of evidence that Mr. Barclay took on himself the burthen of the trust; and to raise a doubt on the subject, is to make out·the complainant's case.    What harm can befall the respondent, or what responsibility can he incur from conveying without a covenant against any thing but acts done, or incumbrances suffered by himself?    By the amendment adverted to, it was agreed " that the said John Nixon and John Barclay, on making such competent conveyances or transfers, forever after be held harmless and blameless for any, and all, neglects or pretended neglects, and for any and all doings, which may have happened or accrued while they were considered the trustees of the company."    Now if the trust descended on the respondent's shoulders, this conventional ægis necessarily descended on them along with it.    But even without protection from that, or from the direction of a court of chancery, to whom could he become answerable for the execution of such a conveyance?    Not to the company who instigated him to do the act; nor yet to the company's equitable grantee who could not be prejudiced by it.    The complainants, therefore, seek to impose on him no heavy or unconscionable burthen.    This company, like many others formed about the same time, was a partnership for the purpose of dealing in land; and a suspicion of the soundness of its title would be as ruinous to its business, as would a suspicion of insolvency be to the credit of a mercantile firm.    Without the relief sought by the bill, the title to its land would appear to be imperfect on the face of it; and as this blemish can be removed without detriment or inconvenience to any one, we are bound to consider the respondent's ancestor to have been an original trustee; and that point being established, a decree to convey is of course.

                                                                    Decreed accordingly.