Valentine Clad and Annie F. Walton, Appellants, *v.* Charles Paist.

*Equity—Jurisdiction—Real estate.*

Where parties are within its jurisdiction, a court of equity will under ordinary circumstances grant relief even in reference to a subject-matter beyond the territorial cognizance of the court.

A bill in equity was filed in Philadelphia county to restrain the obstruction of a right of way in Chester county, dedicated by the defendant to public use. The plaintiffs resided in Chester county, and the defendant in Montgomery county. *Held,* that the court of common pleas of Philadelphia county had jurisdiction of the case.

*Equity—Injunction—Obstruction of right of way.*

A bill in equity to enjoin the obstruction of a right of way by a building will not be dismissed because the defendant avers that he did not intend to build without the plaintiffs' consent, if the testimony shows that prior to the filing of the bill the defendant threatened to build on the land, and manifested a purpose to take it for his exclusive benefit.

Argued Jan. 25, 1897.    Appeal, No. 554, Jan. T., 1896, by plaintiffs, from decree of C. P. No. 4, Phila. Co., March T., 1895, No. 691, on bill in equity.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Bill in equity to restrain the obstructions of a right of way.

The case was referred to Hampton L. Carson, Esq., who reported the facts to be as follows:

The defendant, Charles Paist, in October, 1889, became the owner of a lot of ground at Devon, Chester county, Penna., with a frontage of four hundred and eighteen and three tenths feet on Waterloo avenue, and with a depth to the eastward of two hundred and twenty-five feet, subject to the condition that the improvements to be erected thereon should consist of two substantial, brick, stone or frame dwelling-houses, and no more. By a subsequent purchase he acquired a lot immediately to the eastward with a frontage of four hundred and eighteen and three tenths feet, and a depth of ninety feet, subject to the condition that within two years thereafter he should erect one dwelling-house thereon at a cost not less than $4,000.  By subsequent deeds this condition was released as to the last-named lot.  He thus became the owner of a lot four hundred and eighteen and three tenths feet by three hundred and fifteen feet, subject to the condition of improving the frontage on Waterloo avenue.

Whatever the original intentions of the defendant may have been as to the laying out of the ground in four lots in the spring of 1890, he laid out his ground in three parts, two being lots with a frontage of one hundred and seventy-five feet on Waterloo avenue, with an even depth of three hundred and fifteen feet to the eastward, and the third being an intervening strip or lot of about sixty-nine feet in frontage on Waterloo avenue, with a depth of three hundred and fifteen feet.  This last lot

was laid out as a boulevard, with three beds of shrubbery in the middle, with driveways or roadways on both sides, each of about fifteen feet in width, opening into Waterloo avenue, composed of broken stone or macadam, with a top dressing of screenings. At the time these lots were laid out Mr. Paist, after appropriating one hundred and seventy-five feet in frontage to each lot (carved out of the original four hundred and eighteen and three tenths feet), called the intervening ground a "boulevard," and stated substantially, that value would be attached to the adjoining land because of the improvement. At this time the main boulevard leading from the hotel to the railroad station, immediately to the east of defendant's ground, had not been opened, but there was a board walk leading in the same direction, separated by a small strip of grass from the defendant's ground, to which he was anxious to obtain access. After the purchase by the plaintiffs, the main boulevard was opened;. the grass strip was removed, and the stone surface of the driveways on both sides of the flower beds as laid out on the defendant's lands became united with the stone surface of the main boulevard, thus making physically a continuous driveway or road between the lots of the plaintiffs over the ground of the defendant from Waterloo avenue into the main boulevard. The plaintiff, Clad, bought his lot on September 25, 1890, for the sum of $3,000. The plaintiff, Walton, bought her lot on May 22, 1891, for $3,500. Prior to both of these purchases the defendant, in conversation with the plaintiffs, distinctly referred to the existing condition of the ground. He said that the method of laying it out had been suggested by what he had seen in the city of St. Paul; that the lots were really corner lots; that he intended to dedicate the intervening piece of ground (already in the physical condition for a road, and plainly visible as such) to public use for the benefit of the people of Devon; that it would remain open forever. In the case of Mr. Clad, in answer to the specific question, "Is this going to be a boulevard?" Mr. Paist replied, "I am going to dedicate that boulevard for the public use of Devon, it will stay there forever;" and in the case of Mrs. Walton, he referred to the proposed opening of the main boulevard (a fact not long afterwards accomplished), and informed her that she would have three fronts. The purchases of the plaintiffs were made on the faith of the existing condi-

tion of the ground, and the positive assurances of the defendant of its permanency. The defendant has repeatedly declared to persons residing at Devon, other than the plaintiffs themselves, that he intended to dedicate the boulevard to public use; that it would remain open forever; that he would make a deed to a tree. This, or similar statements, were made to George H. Earle, Jr., Henry C. Davis and F. E. Hastings. The deeds to the plaintiffs contain no express reference to the intervening boulevard as a boundary. The word "lane" occurs in the deed to Mr. Clad. The word "lane" is erased from the deed of Mrs. Walton, and the erasure is noted by the notary before whom Mr. and Mrs. Paist acknowledged the deed. The deed was prepared for the grantee with the word "lane" written therein, and was handed by Mr. Walton to Mr. Paist at Devon, who took it to Norristown for acknowledgment by himself and wife. The erasure was made in the meantime, without the knowledge of the grantee. The notary noted it at the time of execution, neither the grantee nor her husband being present. The deed was then returned, and the fact of the erasure was not known to the plaintiff Walton nor to her husband, until the hearing of the case before the referee.

The plaintiffs, soon after their respective purchases, erected expensive dwelling-houses upon their lands. Mr. Clad established a roadway on his own land leading directly to the boulevard, through an entrance eight feet four inches in width, through which vehicles of all kinds can pass.

At the time of Mr. Clad's purchase, the boulevard was in use by both persons and carriages as a highway, and this public use has been since then continuously enjoyed in an open and notorious manner. Mr. Warren, Mr. Earle, Mr. Terry, tradespeople, guests at the hotel at Devon, those living about the country, maids with children, as well as the plaintiffs, have used the boulevard both as a roadway and footwalk. Temporary obstructions of a slight character were erected on several occasions by the defendant. These were placed there at a time when the frost was coming out of the ground for the protection of the roadbed from heavy vehicles. They extended over but a portion of the driveway, were easily removed, were afterwards removed, and did not close the highway to public travel, nor did they actually diminish the travel, nor signify in a positive manner to the public that the boulevard was closed.

Prior to the filing of the bill, the defendant threatened to build a schoolhouse upon one end of the boulevard, which would materially affect its use as a highway, and would permanently injure the plaintiffs. He has since abandoned this intention, but still insists upon his right to build on one end of the boulevard while admitting his legal inability to do so on the other, because of restrictions in the line of his title. The answer avers the right, and asserts an actual exercise of it.

The referee recommended a decree in favor of the plaintiffs. On exceptions filed he reported in part as follows:

As to the seventeenth exception: In support of this, a new objection was taken by the counsel for the defendant—one which they had not raised or pressed before the referee at any prior stage of the proceedings. They urged that as the right of way from the obstruction of which it was sought to restrain the defendant lies in Montgomery county, a court of equity in Philadelphia county has no jurisdiction of the controversy. The case of Morris v. Remington, 1 Parsons, 387, was cited. That was a case where a bill was filed in Philadelphia county, praying for an injunction against a defendant for a nuisance affecting the plaintiff's land in Montgomery county, by the diversion of a watercourse, which consisted of a natural stream running through the farms of both plaintiff and defendant, both of whom resided in Montgomery county. Although the use of the water was regulated by contract entered into between prior owners of the lands affected, and process had been served upon the defendant in Philadelphia, yet Judge KING refused to entertain jurisdiction because the locus in quo was not within the jurisdiction of his court. His opinion contains a complete discussion of the subject, to which nothing can be added, and the conclusion reached is based upon the principle that the court must be capable of administering in a given case the relief sought. No court will direct that to be done which it cannot enforce, because it is in danger of finding its dignity compromised. A writ of assistance could not be sent into another county to prostrate an alleged nuisance, if on entertaining the bill it should be adjudged to be such. Nor could an issue be awarded into the county where the nuisance exists, in order to inform the court of the damages the plaintiff has sustained by its perpetration and continuance.

This reasoning covers the present controversy. The referee conceives himself to be bound by the authority of this decision. The right of way dedicated by the defendant to public use, and lying between the lands of the plaintiffs, is shown by the bill and the proofs, to be in Chester county. The plaintiffs reside in that county, while the defendant resides in Montgomery county. It is true that the objection was not taken in the answer. The parties proceeded to hearing upon proofs. But under the authority of Wiser's Appeal, 9 W. N. C. 508, and Maguire's Appeal, 102 Pa. 120, the objection to jurisdiction, if there be a palpable and absolute want of equitable jurisdiction, may be taken after filing an answer and proceeding to proof. This view is not affected by Adams's Appeal, 113 Pa. 449, There the court, while not permitting an objection to jurisdiction to prevail in a doubtful case, after the parties had voluntarily proceeded to a hearing upon the merits, conceded it to be true that manifest want of jurisdiction might be taken advantage of at any stage of the cause. The referee, while relying upon that case in his report, did so in its application to another phase of the matter. As the objection now taken presents the controversy in another light, and is radical, it must be sustained.

The plaintiffs' bill should be dismissed, but not at their cost. In view of the circumstances, the referee deems it equitable that each party should bear his own costs, and divide those of the proceedings before the referee.

On exceptions to the supplemental report the court below decided that it had jurisdiction, but dismissed the bill on the ground that the plaintiff had not offered sufficient proof to overcome the denials of the answer.

*Error assigned* was decree dismissing bill.

*Thomas Diehl*, for appellants.—The court had jurisdiction: Munson v. Tryon, 6 Phila. 396 ; Jennings Bros. & Co. v. Beale, 158 Pa. 284.

It is submitted that there is the most ample evidence of a fixed intention on the part of the defendant to violate the rights of the complainants in the disputed tract of land. The court is not asked to decide a bare question of title, which, under Washburn's

154          CLAD et al., Appellants, *v.* PAIST.

App., 105 Pa. 480, Hacke's App., 101 Pa. 249, and Ferguson's App., 117 Pa. 426, it is very well understood cannot be done, but it is asked that the complainants' rights be protected. The dedication of the land to public use by the defendant has been established overwhelmingly, as has also the fact that he made the representation to the complainants that he had dedicated the land, for the purpose of inducing them to purchase their lots at an enhanced value.

*Charles R. Maguire,* with him *Charles C. Townsend,* for appellee.

OPINION BY MR. JUSTICE McCOLLUM, May 3, 1897:

The learned referee prepared a report in which he recommended a decree in conformity with the prayer of the bill. After argument on exceptions to the report he concluded that as the right of way dedicated by the defendant to public use was in Chester county where the plaintiffs resided and the residence of the defendant was in Montgomery county, the court in which the bill was filed had no jurisdiction of the matters complained of in it. He accordingly modified his report and recommended a decree dismissing the bill and dividing the costs between the parties. The learned court, on exceptions to the report as modified, held that the question of jurisdiction should have been decided in favor of the plaintiffs. In so holding the court was clearly right. The parties being within the jurisdiction of the court, the court will under ordinary circumstances grant relief even in reference to a subject-matter beyond the territorial cognizance of the court: Penn v. Lord Baltimore, 1 Vesey, Sen. 444; Vaughan v. Barclay, 6 Wharton, 392; Munson et al. v. Tryon et al., 6 Phila. 395; Jennings Bros. & Co. v. Beale, 158 Pa. 283; Roper v. Roper, 3 Tenn. 1 Ch. 53; Parkes v. Parkes, 3 Tenn. Ch. 647; Wood v. Warner, 15 N. J. Equity, 81; Topp v. White, 12 Heisk. (Tenn.) 165; Great Falls Mfg. Co. v. Worster, 23 N. H. 462; DeKlyn v. Watkins, 3 Sandf. Ch. (N. Y.) 185. The case of Morris v. Remington, 1 Parsons' Select Eq. Cases, 387, which was cited by the referee as warranting the modification of his first report, was clearly inapplicable to the case in hand, and not opposed to the rule under which

the court had jurisdiction to enter a decree restraining the defendant from obstructing the highway mentioned in the bill.

We need add nothing further to what was said by the court below respecting jurisdiction.    The court however thought that the defendant was entitled to have the bill dismissed at the costs of the plaintiffs because he averred in his answer to it that he did not intend to build a schoolhouse on the strip of land in question without their consent, and because in its opinion this part of his answer had not been overthrown by the evidence.    This view of the case does not appear to have been suggested by any exception before the court, and it seems to have entirely overlooked or disregarded the referee's finding of facts.    He distinctly found that "prior to the filing of the bill the defendant threatened to build a schoolhouse upon one end of the boulevard, which would materially affect its use as a highway, and would permanently injure the plaintiffs."    Besides, the defendant's averment in this particular must be considered in connection with other averments in his answer and his testimony in the case.    These, so considered, are clearly evincive of a purpose on his part to appropriate the strip of land in question for his exclusive benefit in plain disregard of his dedication of it to public use, and of the representations on which he sold the lots to the plaintiffs.    His testimony respecting dedication was uncorroborated, and flatly opposed by his own acts and the testimony of many reputable and disinterested witnesses. But it is not necessary to discuss or specifically refer to the evidence applicable to the issues of fact made by the bill and answer.    We have read and considered the whole of it, and our conclusion is that it fully sustains the referee's finding of facts, and warrants and requires a decree restraining the defendant from obstructing or interfering in any manner with the free use by the public of the boulevard or highway in question.

Decree reversed and record remitted to the court below with direction to enter a decree in accordance with this opinion. The costs to be paid by the appellee.