THE NORTHERN INDIANA RAILROAD COMPANY, AND THE BOARD
OF COMMISSIONERS FOR THE WESTERN DIVISION OF THE
BUFFALO AND MISSISSIPPI RAILROAD, APPELLANTS, v. THE
MICHIGAN CENTRAL RAILROAD COMPANY.

The Michigan Central Railroad Company, established in Michigan, made an agree-
ment with the New Albany and Salem Railroad Company, established in Indiana,
that the former would build and work a road in Indiana, under the charter of the
latter.

Another company, also established in Indiana, called the Northern Indiana Railroad
Company, claiming an exclusive right to that part of Indiana, filed a bill in the
Circuit Court of the United States, for the District of Michigan, against the Michi-
gan company, praying an injunction to prevent the construction of the road under
the above agreement.

The Circuit Court had no jurisdiction over such a case.

The subject-matter of the controversy lies beyond the limits of the district, and where.
the process of the court cannot reach the *locus in quo*.

Moreover, the rights of the New Albany Company are seriously involved in the con-
troversy, and they are not made parties to the suit. The act of Congress, providing
for the non-joinder of parties who are not inhabitants of the district, does not apply
to such a case as the present.

THIS was an appeal from the Circuit Court of the United
States, for the District of Michigan, sitting as a court of equity.

The appellants were complainants below. They were cor-
porations created by, and doing business in, the State of
Indiana, claiming a prior right to make and use a railroad
running from east to west across the northern part of Indiana.
The defendants were a company incorporated by Michigan,
and had made a road from Detroit to Michigan City. Being
desirous to continue the road round the southern end of Lake
Michigan, they entered into an agreement, for this purpose,
with a company, incorporated by Indiana, called the New
Albany and Salem Railroad Company. The appellants filed
a bill in Michigan, the domicil of the Michigan Central Rail-
road Company, praying for an injunction to prevent them from
entering upon or using the said lands of said complainants, and
from grading and excavating upon the same, and from hinder-
ing the complainants from completing their road and using the
same exclusively, and from constructing and using the railroad
which the defendants have laid out, or any railroad upon or near
the line where the same is located, and from doing any thing in
violation of the exclusive rights of the complainants.

To this bill the defendants demurred, and the Circuit Court
dismissed the bill, with costs.

The complainants appealed to this court.

It was argued by *Mr. Bronson*, for the appellants, and by *Mr.
Pruyn* and *Mr. Jay*, for the appellees.

Northern Indiana Railroad Co. v. Michigan Central Railroad Co.

The arguments branched out into several heads, but it is only necessary to notice those bearing upon the question of jurisdiction, arising from locality and the want of proper parties.

*Mr. Bronson*, for appellants.

*Sixth Point.*   The New Albany and Salem Company is not a necessary party.

First.   The defendants have done, and threaten to do, the wrong of which we complain.   It is a tort or trespass upon our rights, for which the wrongdoers are answerable, whoever may stand behind them.   No one standing behind a trespasser, whatever may be the relation between them, has a right to say that he must be made a party, when the person injured seeks redress against the transgressor.   We demand nothing as against the New Albany and Salem Company.   Kerr *v.* Watts, 6 Wheat. 550.

If the New Albany and Salem Company was made a party, the rights existing between that company and the defendants, whatever those rights may be, could not be adjusted in this suit.

Second.   The relation between the New Albany and Salem Company and the defendants is that of grantor and grantee; and it is never necessary to make the grantor a party to a suit against the grantee, except in real actions, where the grantee vouches the grantor to warranty.

The New Albany and Salem Company has sold its franchise, so far as relates to the road in question, to the defendants, and the pretended right to repurchase is only colorable.

(1.) There is no mortgage, because there is no debt or obligation to pay.   Conway *v.* Alexander, 7 Cranch, 218, 237; Almy *v.* Wilber, 2 Wood. & Minot, 371; Glover *v.* Payn, 19 Wend. 518.

(2.) There is nothing like the relation of principal and agent. The defendants are doing work for themselves only.

Third.   If the relation between the two companies is that of mortgagor and mortgagee, or principal and agent, it is still enough that we bring into court the party who has done and is doing the wrong, when we ask no redress against the other.

The New Albany and Salem Company could not, by any form of contract with the defendants, entitle themselves to be made parties to assist against the defendants as tort-feasors.

Fourth.   The New Albany and Salem Company is not a necessary party, because it cannot be joined without ousting the jurisdiction of the court.

(1.) The jurisdiction of the Circuit Court, as the suit now stands, cannot be questioned.   The matter in dispute exceeds

five hundred dollars, (page 10.) The complainants are cor-porations created by, and doing business in, Indiana. The defendants are a corporation created by, and doing business in, Michigan. The suit is, therefore, between citizens of different States. Louisville R. R. Co. *v.* Letson, 2 Howard, 497. And the suit is brought in Michigan, where the defendants reside.

(2.) The New Albany and Salem Company is a corporation created by, and doing business in Indiana, page 6.

That company cannot be made a defendant in this suit, for the reasons,

1. It is a citizen of the same State with the complainants; and

2. It cannot be arrested or served with process in the District of Indiana, where it resides, for trial in the District of Michigan, where the suit is brought, and the trial is to be had. Judiciary Act, of 1789, § 11.

The courts of the United States have always been disposed to get rid of an objection for the non-joinder of a party who was beyond the jurisdiction of the court, or whose joinder would oust the court of jurisdiction.

And the case is now fully provided for by Congress, and the rules of the court.

## *Act of February* 28, 1839.

Sect. 1. " That where, in any suit at law or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within, the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit, between the parties who may be properly before it; but the judgment or decree rendered therein shall not conclude or preclude other parties not regularly served with process, or not voluntarily appearing to answer; and the non-joinder of parties who are not inhabitants, or found within the district, shall constitute no matter of abatement or other objection to said suit."

## *Rules of Practice for the Court of Equity of the United States, adopted January Term,* 1842.

Rule 22. " If any person, other than those named as defend-ants in the bill, shall appear to be necessary or proper pa ies thereto, the bill shall aver the reason why they are not made parties, by showing them to. be without the jurisdiction of the court, or that they cannot be joined without ousting the juris-diction of the court as to the other parties." 1 Howard, 48.

The proper averment has been made in the bill, by showing that the New Albany and Salem Company is without the jurisdiction of the court, and cannot be joined without ousting the jurisdiction of the court. Ketchum v. Farmers Loan and Trust Company, 4 McLean, 1; Culbertson v. Wabash Navigation Company, Id. 544.

Rule 47. Union Bank of Louisiana v. Stafford, 12 Howard, 327, 341 – 3; New Orleans Canal and Banking Company v. Stafford, Id. 343, 346; McCoy v. Rhodes, 11 Id. 131, 141.

The counsel for the appellees made the following points:

As to want of jurisdiction from locality — The Circuit Court in Michigan had no jurisdiction in the case. Whether the defendants act under the authority of law or not, the alleged cause of complaint is local, and the bill can only be maintained in Indiana. 6 Cranch, 158; Chitty, Pl. 268; 1 Atk. 544; 3 Vesey, 183; 10 Vesey, 164; 3 Atk. 589; 1 Sumn. 504; 1 H. & J. 223; 1 Vesey, sen. 446.; 1 Bibb, 409.

As to the want of proper parties — The defendants contend that the case cannot go on, even to a hearing, without the presence of the New Albany and Salem Railroad Company. The injustice of hearing and deciding the case without giving that company an opportunity to be heard, is manifest, and most clearly so. It claims the right and authority to construct a railroad from New Albany to the Illinois line, making Michigan City, at the head of Lake Michigan, the termination of the Michigan Central Road, a point, and to mortgage the whole or any part of the road constructed, or proposed to be constructed, to obtain money wherewith to build. It has entered into an arrangement with the Michigan Central Company to advance money enough to construct, and to construct, as the agent of that company, that part of the road west of Michigan City, and to take in addition thereto $500,000 of stock, which said money is to be expended, one fifth south and four fifths north of Lafayette and south of Michigan City, and for the punctual payment of the subscriptions of stock it holds as absolute security all the road from Michigan City to the Illinois line complete and running; with the right to declare forfeited and null all the rights of the Michigan Central Company, in case of its default in paying its subscriptions of stock. It has mortgaged its entire line of road from New Albany to Michigan City, and upon the credit thereof, has obtained loans to large amounts, which are rapidly completing the road through its entire distance. It is still in the money market to dispose of about a million and a half of unsold mortgage bonds to complete entirely the work, the most important, by far, in the State of Indiana. The

farmer, merchant, and mechanic, from one end of the State to the other, are its stockholders.

Now, upon all these vast interests, the decree of this court, if it can make one against these defendants, must act directly. It is the charter of the New Albany and Salem Company which is in controversy. The powers claimed by it will be struck out of existence. Its arrangements with the Michigan Company will be declared null and void. Its road west of Michigan City will be struck out of legal existence. Its security for $500,000 of stock destroyed. Its road south of Michigan City towards Lafayette complete more than half, and nearly complete the whole distance, blotted out. Its credit in the money market, its stock and its bonds sold, will be ruined, and all this in a suit where that company cannot be heard. Is this possible in a court of equity? And yet this suit cannot go on, and the complainants succeed, without all these disastrous results. They are the direct results of the decree sought, and of the allegations in the bill; and the rights of the New Albany and Salem Company are all the rights in controversy, the Michigan Central Company claim none of themselves, and exercise none except as the New Albany and Salem Company are empowered to grant them.

That the welfare, nay, the fate, of the New Albany Company, of its stocks, bonds, its entire interests, depends upon this question, there can be no doubt. Can this case go on without making that company a party? Shall a decision be had which may destroy it, when, if here, it might make a showing and a defence which the present defendants know nothing of? There needs nothing to show the injustice of thus acting.

" But the rule of law here runs with equity and justice. All persons interested, either legally or beneficially, in the subject-matter of the suit, are to be made parties to it, either as plaintiffs or defendants, so that a complete decree shall be made, which shall bind them all. By this means the court will make a complete decree to prevent future litigation, and to make it perfectly certain that no injustice is done either to the parties before it or to others who are interested in the subject-matter by decree, which might otherwise be grounded upon a partial view only of the real merits. When all parties are before the court the whole case may be seen, but it may not where all the conflicting interests are not brought out by the pleadings by the parties thereto." Story's Pleadings, p. 74, sections 72 and 75.

" If the proper parties are not made to a bill, even though there be a decree, yet it will bind none but the parties to a suit, so that all the evils of fruitless or inadequate litigation may be visited upon the successful party to the original suit, by leaving

his title still open to future question and controversy." Story, § 75.

Here the New Albany Company would not be bound. It would, in its own courts, seek to enforce its rights under the contracts with the defendants. The State courts would not be bound even by a decree of this court construing the statutes of the State, and this court might be compelled to reverse its own decisions on such a question. What would be the position of the two companies in such a case?

This question is fully discussed also in the following cases: Platt and Oliver, 2 McLean, 305; 4 Peters, 202.

We are aware that there are exceptions to this rule, but they are all cases where complete justice can be done between the parties before the court, without prejudice to the rights and interests of parties not before it. Story's Pleadings, sections 77, 81, 83, 89, 94, 96, 154, 191, 192, 193.

Agents are not proper parties to a bill, because they have no interest in the subject-matter. There is one instance, however, and that is where a discovery may be sought from a corporation in which officers may be joined, though Judge Story evidently did not think this exception founded upon principle. Story's Pleadings, 204, § 235.

We are not unaware of the remarks which fell from Mr. Justice Baldwin, in the case Bonaparte v. The Camden and Amboy Railroad Company. He there seems to think that because an agent can be sued for a trespass, he can be impleaded in the Court of Chancery, and the principles upon which the two courts act in allowing suits against agents are the same, and he reasons from cases at law to cases in equity. There may be no doubt that an agent may be, in a multitude of cases, sued at law, when the rights of his principal could not be determined and settled in a suit in equity against him alone. The case of Osborne against the United States bears no analogy to this. There was in that case no possibility that the decree of the court could operate injuriously to any other parties; and in the case of Bonaparte, the railroad company was made a party, and could be heard.

That case also differs from this in many respects. There were no such relations there subsisting between the railroad company and its agents, as subsist between the defendants and the New Albany and Salem Company. The decree for an injunction would not cut through such vast interests, and work such wide, sweeping destruction to manifold interests as would an adverse decree in this case. That case differs from this also in this: that was a bill to enjoin against committing a trespass which would be the cause of an irreparable injury, and imme-

diate and decisive action was necessary to avert the ruin. Here is no such thing. Here the bill is merely to test the legal right, which in truth should be tried in an action of ejectment. It is not to prevent a trespass, but to procure a decision whether the New Albany and Salem Railroad Company have the legal right to maintain a railroad where it has constructed and laid it down, and is now operating it. It sufficiently appears from the bill that the road had been constructed before the bill was filed. It had, in fact, been constructed for some months, and passenger trains had been run over it for a long period of time. The controversy is, then, not to prevent an irreparable trespass, but to dispute the right of the New Albany and Salem Company to maintain its road where it has long been built and in operation, and was so before the road of the complainants was built; to dispute its right to mortgage it to the defendants, and to procure a decree that its asserted rights are null and void, and securities held by it and mortgages made by it are all null and void; and to enjoin against the maintaining and using its road; and all this without giving it a chance to be heard. It would seem as if there could be no need of argument in such a case in a court of equity.

It is no answer to these questions to say that the jurisdiction of this court will be ousted if the New Albany and Salem Company is made a party. The court cannot go on and do justice unless that company is a party, and that is always a reason why the suit should be dismissed. 3 Sumner, 426; 3 Russell & Mylne, 83; 2 Mason, 181; 3 Swanston, 140 – 5.

The act of Congress of 1839 cannot aid the complainants in this case. That act did not intend to overthrow the fundamental principles upon which a court of chancery acts, and determine the rights of one party in a suit against another. That act simply provides that the court shall go on with the suit against the party who shall appear; but the decree shall not affect the rights of the party who does not appear; that is, that the court shall exercise its jurisdiction where it may do so without prejudice to the rights of parties in interest who do not appear, or have not been made parties. Act of Feb. 28, 1839, sec. 1.

This does not at all change the principles which are fundamental with courts of equity upon questions of jurisdiction. See 14 Peters, 66.

In order to change the universal rule of the court, and alter its practice in fundamental points, the act of Congress should be express, and its intention to do so expressed with irresistible clearness and force. 1 Peters's Cond. Rep. 425.

Mr. Justice M'LEAN delivered the opinion of the court.

This is an appeal in chancery, from the Circuit Court of the District of Michigan.

The Northern Indiana Railroad Company, and the Board of Commissioners for the Western Division of the Buffalo and Mississippi Railroad, corporations created by, and doing business in, the State of Indiana, filed their bill in the Circuit Court, stating that an act of the legislature of Indiana, dated February 6th, 1835, incorporated the Buffalo and Mississipi Railroad Company. That by a subsequent act of the legislature, of February 6th, 1837, the name of the corporation was changed to that of the "Northern Indiana Railroad Company;" that by an act of the 8th of February, 1848, the "Board of Commissioners for the Western Division of the Buffalo and Mississippi Railroad," were incorporated. That several acts of the legislature of Indiana were passed, confirming, amending, and enlarging the charters and franchises of the same corporations; that by virtue of said laws the complainants are severally entitled to do and perform business in the State of India, as authorized by their said charters.

That the Northern Indiana Railroad Company, after being duly organized, examined, surveyed, marked, and located the route of their railroad, and by the means specified in the aforesaid acts, procured the right of way for said railroad, as the same has been constructed, and become seised in fee of the right to the lands acquired for that purpose, with all the privileges and franchises in relation thereto, confirmed and declared by the said acts; and that the route of that part of the western division of said railroad, lying between Michigan City, in the county of Laporte, and the western line of the State of Indiana, was duly surveyed and located, and the right of way duly acquired. That a part included in said location consists of a strip of ground eighty feet in width, extending from Michigan City to the west line of the State of Indiana, and that the railroad has been constructed and is in operation, from Elkhart to Laporte, and from Michigan City to the west line of the State of Indiana.

And the complainants say that they have purchased, and now own in fee-simple, certain other lands situated on or near the line of said railroad, which is deemed necessary for the business and purposes of said railroad. And they aver that they commenced their road within the time required, and have prosecuted the same, as by the several acts above referred to, they were required to do. That among the rights and privileges under their charters, is the sole and exclusive right and privilege of building, maintaining, and using a railroad along

the general route of the road.    And they insist that no charter can be lawfully granted to any other company to construct any other road or roads, in the vicinity of said railroad, which would materially interfere, injuriously, with the profits of said road, without the consent of the complainants, which has not been given.    That the legislature of Indiana has no power to establish such a road, there being no such power reserved in the original charter.

And the complainants allege the Michigan Central Railroad, a corporation created by, and doing business in, the State of Michigan, were incorporated for the purpose of constructing and using a railroad from Detroit. in the State of Michigan, to some point in the same State upon Lake Michigan, accessible to steamboats navigating said lake; and with authority to extend their road to the southern boundary of the State of Michigan; that said company have constructed and now keep in use, a railroad from Detroit to New Buffalo, and thence to the southern line of the State of Michigan in the direction towards Michigan City, in the State of Indiana; and that by an arrangement with the Commissioners of the Western Division of the Buffalo and Mississippi Railroad Company, the road has been extended and is now in use to Michigan City.

And the complainants further allege, that the New Albany and Salem Railroad Company is a corporation created by and under certain acts of the legislature of the State of Indiana, and, doing business therein, has no power or franchise to construct, or to authorize the construction, of any railroad whatsoever, except what is contained in certain statutes referred to in the bill.    That said company, and the defendants, the Michigan Central Railroad Company, on or about the 24th of April, 1851, entered into a contract with each other, which contract is in the possession of the defendants, and a discovery of the same is prayed, and that it may be produced.    That by color of said contract the defendants claim the right to construct and use a railroad from Michigan City to the western line of the State of Indiana, by a route nearly parallel with the complainants' railroad, and in its immediate vicinity, and several times crossing the same; and also the right and power to locate, construct, and use such railroad, over and across the complainants' road, with the exclusive franchises and privileges aforesaid, as they, the defendants, shall see fit.

That the defendants have so laid out the route of their road from Michigan City to the western line of the State of Indiana, as to cross the complainants' railroad upon lands, the title of which was acquired by, and is now held by the complainants, and upon which their railroad has been constructed, with the

purpose and intent of obstructing and unlawfully interfering with the possession, occupancy, and use of the complainants' lands, and with the intent to hinder and molest them, in the enjoyment and use of the rights and franchises granted to them by the legislative acts stated, and to defeat the exclusive right to have and use a railroad within that vicinity.

And after stating many other facts having a bearing upon the New Albany and Salem Railroad Company ; and, as they allege, conducing to show a want of right in that company to extend their road to Michigan City, and from thence to the western line of the State of Indiana, near to and parallel with the complainants' road, as above stated, they pray that the defendants may be enjoined from the construction of their road, &c.

The defendants filed a general demurrer to the bill, and a decree was entered in the Circuit Court, sustaining the demurrer and dismissing the bill.

At the threshold of this case, the question of jurisdiction arises. It is not controverted, that the road of the defendants, against which the injunction is prayed, has been constructed, not only from Michigan City to the Western line of the State of Indiana, but to Chicago, in the State of Illinois. The demurrer admits the facts charged in the bill, and they are also established in part by surveys of both roads.

The jurisdiction of the Circuit Court of the United States, is limited to controversies between citizens of different States, except in certain cases, and to the district in which it sits. In this case we shall consider the question of jurisdiction in regard to the district only. In all cases of contract, suit may be brought in the Circuit Court where the defendant may be found. If sued out of the district in which he lives, under the decisions he may object, but this is a privilege which he may waive. Wherever the jurisdiction of the person will enable the Circuit Court to give effect to its judgment or decree, jurisdiction may be exercised. But wherever the subject-matter in controversy is local, and lies beyond the limit of the district, no jurisdiction attaches to the Circuit Court, sitting within it. An action of ejectment cannot be maintained in the district of Michigan, for land in any other district. Nor can an action of trespass *quare clausum fregit* be prosecuted, where the act complained of was not done in the district.

Both of these actions are local in their character, and must be prosecuted, where the process of the court can reach the *locus in quo.*

The complainants allege that the defendants have built a railroad, crossing their road several times; have entered upon their grounds, and, by building a parallel road so near as to carry the

same line of passengers and freight, their franchise has been impaired.    That they have an exclusive right to run a railroad on the route stated, and that they have been seriously injured by the defendants' road. ·

This remedy by injunction is given to prevent a wrong, for which an action at law can give no adequate redress.    In its nature it is preventive justice.    Where the wrong has been inflicted before an injunction was applied for, it may be a matter of doubt, in most cases, whether an action at law would not be, at first, the appropriate remedy.    But whether the relief sought be at law or in chancery, the question of jurisdiction equally applies.

In his conflict of laws, Mr. Justice Story says, (sec. 463,) not only real but mixed actions, such as trespass upon real property, are properly referable to the *forum rei sitæ*.    Skinner *v.* East India Company, Law Rep. 168; Doulson *v.* Matthews, 4 Term R. 503; Watts *v.* Kinney, 6 Hill, N. Y. Rep. 82.    But he says a court of chancery, having authority to act *in personam* will act indirectly, and under qualifications, upon real estate situate in a foreign country by reason of this authority over the person, and it will compel him to give effect to its decree, by a conveyance, release, or otherwise, respecting such property."    Foster *v.* Vassall, 3 Atk. 589; 1 Equity Cases, Abr. 133; Penn·*v.* Lord Baltimore, 1 Ves. 444; Lord Cranstown *v.* Johnson, 3 Ves. 182, 183; White *v.* Hall, 12 Ves. 323; Lord Portarlington *v.* Soulby, 3 Mylne & Keen, 104; Massie *v.* Watts, 6 Cranch, 148, 160. In this last case the Chief Justice says, " Upon the authority of these cases, (cited,) and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."    In another part of the opinion he says, " Was this, therefore, to be considered as involving a naked question of title; was it, for example, a contest between Watts and Powell, the jurisdiction of the Circuit Court of Kentucky would not be sustained."

If the court had acquired jurisdiction of the person by his being within the State, they will compel him, by attachment, to do his duty under his contract or trust, and enforce the decree *in rem*, by his executing and conveying or otherwise, as justice may require, in respect to lands abroad.    White *v.* White, 7 Gill & Johnson, 208; Vaughan *v.* Barclay, 6 Wharton, 392; Watkins *v.* Holman, 16 Peters, 25.

The controversy before us does not arise out of a contract, nor is it connected with a trust expressed or implied.    An exclusive right is claimed by the complainants, under their char-

ters, and the legislative acts of Indiana connected therewith, to construct and use a railroad, as they have done, from the city of Michigan, to the western line of the State. And they complain that the defendants have unlawfully entered upon their grounds, constructed a road crossing the complainants' road several times, and materially injuring it, by constructing a road parallel to it. Relief is prayed for an injury threatened or done to their real estate in Indiana, and to their franchise, which is inseparably connected with the realty in that State.

In the investigation of this case, rights to real estate must be examined, which have been acquired by purchase, or by a summary proceeding under the laws of Indiana. This applies, especially, to the ground on which the complainants' road is constructed, and to other lands which have been obtained, for the erection of facilities connected with their road. And, in addition to this, the chartered rights claimed by the defendants, and the right asserted by them to construct their road as they have done, crossing the complainants' road and running parallel to it, must also be investigated. Locality is connected with every claim set up by the complainants, and with every wrong charged against the defendants. In the course of such an investigation, it may be necessary to direct an issue to try the title of the parties, or to assess the damages complained of in the bill.

It will readily be admitted, that no action at law could be sustained in the district of Michigan, on such ground, for injuries done in Indiana. No action of ejectment, or for trespass on real property, could have a more decidedly local character than the appropriate remedy for the injuries complained of. And is this character changed by a bill in chancery ? By such a procedure, we acquire jurisdiction of the defendants, but the subject-matter being local, it cannot be reached by a chancery jurisdiction, exercised in the State of Michigan. A State court of Michigan, having chancery powers, may take the same jurisdiction, in relation to this matter, which belongs to the Circuit Court of the United States, sitting in the district of Michigan. And it is supposed that no court in that state, could assume such a jurisdiction.

But there remains another ground of objection to the jurisdiction in this case. The New Albany and Salem Railroad Company is not made a party to this suit. As an excuse for this omission, it is alleged, in the bill, that this company being a corporation by the laws of the State of Indiana, of the same State as the complainants, it cannot be made a party without ousting the jurisdiction of the court. This is true ; and if the relief prayed for by the complainants can be given without impairing the rights of this company, under the act of 1839, the jurisdiction may be exercised.

The complainants contend that this company is not a necessary party, and that no decree is asked against it.

The right claimed by defendants to construct their road as stated in the bill, was derived solely from the New Albany and Salem Company. The contract under which this claim is made, is referred to in the bill, and is, consequently, a part of it. It is stated in the contract that this company, "both for the public good and their own interest, deemed it important to extend its road to Michigan City, and thence westward by the State line of Illinois, &c. And it is also stated that the Michigan Central Railroad Company were willing to subscribe for five hundred thousand dollars of the stock of the New Albany and Salem Railroad Company upon certain conditions, as well as to build the entire line of railroad from Michigan City to the Illinois State line, provided they can have the use and control of the same, until the costs of the same shall be reimbursed to it, &c. The payment of the stock to the New Albany road, as one of the conditions, was to be made by instalments stipulated, a large part of which are yet unpaid. And to reimburse the Michigan Company a million of dollars were assumed as the cost of the road, from Michigan City to the western line of the State, which sum, if paid in forty years, with interest at five per cent. per annum, the railroad to be constructed by the Michigan Company, with all its equipments, shall become the property of the New Salem Company, and the mortgage or pledge of the contract shall cease.

In the argument it was contended by the complainants, that under no act or acts of the Indiana legislature have the New Albany and Salem Company, a right to construct a railroad further north than Crawfordsville. That certain words used in the act of February 11th, 1848, giving the company power to "extend their road to any other point or points than those indicated by the location heretofore made by the authority of the State," were necessarily limited to the points named in previous acts, New Albany, Salem, and Crawfordsville. And that in extending the road from Crawfordsville north to Michigan City, and thence west parallel with the complainants' road to the western line of the State of Indiana, it was located without any legal authority.

From the above it appears that the validity of the New Albany and Salem charter is involved in this case, for between two and three hundred miles, from Crawfordsville to Michigan City, and thence to the western line of the State of Indiana. The construction of that road has been nearly, if not entirely completed, at an expenditure of between two and three millions of dollars. And in addition to this, it appears from the con-

tract made between this company and the Michigan company that, as one of the conditions of the contract, the latter company subscribed in stock to the New Albany and Salem road, half a million of dollars, a part of which sum only has been paid.

Now, if this court, in giving the relief prayed for by the complainants, should find it necessary to declare that the above charter gave no authority to the New Albany Company to locate and construct their road north of Crawfordsville, it would be ruinous to that company. And it is clear, that any decision which shall declare the road from Michigan City to the western line of the State of Indiana, without the protection of law; must equally apply to the road from Michigan City to Crawfordsville, as they were located and built under the same authority. This question is, therefore, vitally interesting to the New Albany Company; and by the bill we are called to decide that question, although that company is not made a party to the suit. It is impossible to grant the relief prayed, without deeply affecting the New Albany Company. If their charter should be held good, as claimed by that company, an injunction against the defendants would materially injure the New Albany Company, as it would not only impair the contract made with the defendants, in regard to the road from Michigan City westward to the State line, but it would, probably, release the defendants from a subscription of half a million to the stock of the Crawfordsville road, or at least from the payment of the part of that subscription which has not been paid.

The act of 1839 provides, that " where, in any suit at law or in equity commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within the district, jurisdiction may be entertained, but the judgment or decree shall not conclude or preclude other parties. And the non-joinder of parties who are not inhabitants, or found within the district, shall constitute no matter of abatement, or other objection to said suit."

The provision of this act is positive, and in ordinary cases no difficulty could arise in giving effect to it; but in a case like the present, where a court cannot but see that the interest of the New Albany Company must be vitally affected, if the relief prayed by the complainants be given, the court must refuse to exercise jurisdiction in the case, or become the instrument of injustice. In such an alternative we are bound to say, that this case is not within the statute. On both the grounds above stated we think that the Circuit Court has no jurisdiction. The judgment of that court, in dismissing the bill, is therefore affirmed.

Mr. Justice CATRON and Mr. Justice CAMPBELL delivered separate opinions.    Mr. Justice DANIEL dissented.

Mr. Justice CATRON.

The Northern Indiana Railroad Company and the Railroad Commissioners for the Western Division of the Buffalo and Mississippi Railroad Company, filed their bill against the Michigan Central Railroad Company, in the Circuit Court of the United States in the District of Michigan, seeking an injunction against the defendant to prevent the Michigan company from laying down and using a railroad around the southern end of Lake Michigan, and within the State of Indiana; which road crosses the road of the complainants, and runs near to, and parallel with it, and, as the complainants allege, will materially withdraw their profits.    And the complainants insist that they have a monopoly by their charter to construct the only road near to and around the southern end of the lake, and that the defendant has violated the chartered rights secured to the complainants.

The bill was demurred to, and the demurrer was sustained by the Circuit Court.    The first cause of demurrer set forth is, that the complainants have not, by their bill, made such case as entitles them to any discovery or relief against the defendant as to the matters contained in the bill, or any of them; and the judgment of the court is prayed whether the defendant shall be compelled to make further answer; and, on this state of pleadings, the question standing in advance of all others is, whether the Circuit Court had jurisdiction to entertain the bill, as between these parties, independent of the merits of the case set forth.    The bill alleges that the Northern Indiana Railroad Company, and the Commissioners of the Buffalo company, were, severally, corporations created by the State of Indiana, and were doing business in said State according to their charters; "and are, in meaning and contemplation of the Constitution and laws of the United States, citizens of the State of Indiana, and entitled to be deemed and taken as such citizens for all the purposes of suing and being sued, and for the purposes of this bill of complaint."

A corporation is composed of many individual members, having a joint interest, and a joint right to sue in their corporate name; and the consideration here presented is, whether a State law, creating the corporation, makes such corporation "a citizen," according to the Constitution, regardless of the fact where its members reside.    If the corporation be such citizen, then every member of the corporate body might reside in Michigan, and yet have the right to sue citizens of Michigan there in the United States court.

Northern Indiana Railroad Co. v. Michigan Central Railroad Co.

The Constitution gives jurisdiction to the courts of the Union, "between citizens of different States." Now, if it be true, that corporations — such as for making roads, &c. — be citizens in the established sense of the Constitution, it must have been thus settled in the case of the Louisville Railroad Company v. Letson, 2 How. 497; as, previous to that decision, (made in 1844,) this court did not suppose that a corporation was a citizen. Nor was any such question presented in Letson's case; far from it.

Letson sued the railroad company in covenant, by their corporate name, distinctly averring that the members of the company were citizens of South Carolina, and that the plaintiff was a citizen of New York.

The defendant pleaded in abatement, that Rutherford and Baring, two of the stockholders, were citizens of North Carolina; and that the State of South Carolina was also a stockholder. To this plea there was a demurrer, which was sustained in the Circuit Court and in this court.

It was held, 1. That the State could not object, as she stood on the foot of every other individual stockholder and need not be sued; and,

2. That fugitive stockholders, who were changing every day, and quite too numerous to be included in a suit, need not be made parties of record.

This, from the report of the case, seems to have been the unanimous opinion of the members of this court, who were present at the time; certainly it was my opinion.

The president and directors of the railroad company were alleged to be, and admitted to be by their plea, citizens of South Carolina; they represented the stockholders, and were their trustees, and whose acts were binding on the stockholders. This state of parties conformed to the act of Congress of 1839, and the spirit of the 47th, 48th, 49th, and 50th rules for the government of chancery practice in the federal courts, adopted in 1842.

It is now assumed, that Letson's case overruled the decision in Strawbridge v. Curtis, 3 Cranch, 276. That decision undoubtedly proceeded on the true rule.

There were various complainants to a bill in equity; and the bill alleged that some of the complainants were citizens of Massachusetts, where the suit was brought; and that the defendants were also citizens of Massachusetts, except Curtis, who was stated to be of Vermont, and a subpœna was served on him in that State. There, it was held, " that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts." A bill thus framed could not at this day be treated seriously.

The next case supposed to be in conflict with Letson's case is that of the United States Bank v. Devereux, 5 Cranch, 61. The old Bank of the United States sued Devereux and Robertson, in the Circuit Court of Georgia, alleging that it was a corporation established under an act of Congress of 1791; and alleging, further, that the petitioners, the President, Directors, and Company of the Bank of the United States, were citizens of the State of Pennsylvania; and that Devereux and Robertson, the defendants, were citizens of Georgia; and this averment was held sufficient by the court.

That Letson's case overruled that of the R. R. Bank of Vicksburg v. Slocum and others, is true; and it was justly overruled, as I think. Slocum, Richards, & Company sued the Bank, alleging that they were citizens of Louisiana, and that the President, Directors, and Company of the Bank were citizens of Mississippi. The Bank pleaded in abatement, that Lambeth and Thompson, two of the stockholders, were citizens of Louisiana. And this court sustained that plea; whereas, according to Letson's case, it was quite immaterial where the stockholders resided, so that the president and directors were citizens of the State where the suit was brought.

What a corporation is, was very fully discussed in Devereux's case (5 Cranch); nor will I discuss it further here, as I do not feel called on to prove, to the legal profession of this country, that a corporation is not a citizen. And as no averment is made in the bill before us, that the president and directors of the corporations suing, are citizens of different States from the president and directors of the corporation sued, I think the demurrer ought to be sustained, and the court below instructed to dismiss the bill.

I view this assumption of citizenship for a corporation as a mere evasion of the limits prescribed to the United States courts by the Constitution. The profitable corporations are owned in a great degree in the cities; there the president and directors often reside; whilst the charter was granted in another State, and there the owners keep an agency, the business being in fact conducted in the city.

Now these owners and directors may sue their next neighbors of their own State and city, in the United States courts, according to the rule that the corporation is a citizen of the State where is was created, and that jurisdiction depends on this sole fact.

Could I consent to pronounce from this bench an opinion deemed by myself extrajudicial, and, therefore, without authority, I might attempt an argument to expose the irregularity and impotence of an adjudication confined, by law, within

prescribed geographical limits, with respect to subjects purely local, whenever it should be attempted to extend the operation of such adjudication beyond the *locus* to which the law has allotted it. For of this character has been the action of the Circuit Court upon the controversy of these two corporations now before us. The Northern Indiana Railroad Company, incorporated by the State of Indiana, have complained of an invasion of their local rights, a tort to real property situated within the territory of Indiana, by a company incorporated by, and situated within, the State of Michigan; and the Circuit Court for the State of Michigan, limited in its cognizance of local matters to the territory of that State, has undertaken to adjudicate upon the merits of this complaint. But irregular and futile as is the action of the Circuit Court of Michigan, and as it is by all here admitted to have been, can it have been more irregular than is the undertaking, on the part of this tribunal, to pronounce authoritatively upon the character of the acts, or the relative rights and powers of the parties, over which the Circuit Court of Michigan has claimed cognizance? Is not the warrant for cognizance by the Circuit Court and by this tribunal essentially, nay, precisely, the same? Are they not both to be found, if existing at all, in the Constitution of the United States? And is it not indispensable that such cognizance should be regularly and certainly vested in the Circuit Court, before this court can sanction its validity? If it be asked, by what provision of the Constitution the Circuit Court could assume jurisdiction of the present controversy, it must, of necessity, be referred to that (2d sec. 3d Art.) provision which extends the judicial power to controversies between citizens of different States. This, indeed, is admitted; and the admission carries with it inevitably the implication that a corporation can and must, for certain purposes, become a citizen, and must, *ex necessitate*, possess the attributes of citizenship in order to obtain access to a court of the United States. Having, on a former occasion, (*vide* the case of Rundle et al. *v.* The Delaware and Raritan Canal Company, 14 Howard, 95,) endeavored to expose the incongruities involved in, and incident to, this anomalous conception, I will not now attempt a further enumeration of them beyond this obvious remark, — that citizenship and corporate existence, created by State authority, being decreed by this court to be, to some extent at least, identical, as must be the case to authorize this court to call the parties before them, it must follow that, to the same extent, a corporation can be a citizen, and a citizen can become a corporation. The process by which the latter transformation may be accomplished has not yet been pointed out. We are told,

by the English jurists, and by the decisions of the English courts, and so, too, in the case of the Bank of the United States *v.* Devereux, it is laid down by Marshall, C. J., that a corporation is an invisible, intangible, artificial creature. In one sense, at least, the citizen may render himself invisible and intangible — he may abscond. In what signification he must become artificial, amongst the infinite varieties which may be imagined, will present a question more difficult to be determined. But in the possession of a portion even of his corporate attributes, the citizen may be deemed a *quasi* corporation, when it shall be thought convenient; and will, doubtless, in that chrysalis condition, furnish as just a representation of the integral legal entity, as the latter, in the shape of *quasi* citizen, can ever supply of the real, material, and social being with whom it is sought to identify it.

Powerless and vain as probably ever will be the "still small voice" of an humble individual, in opposition to the united declaration of those justly considered the learned and the wise, still, under the most solemn conviction of duty, the effort can never be forborne to raise that humble voice in accents of alarm at whatever is believed to threaten even the sacred bark in which the safety both of the States and of the United States is freighted. I hold that, beyond the Constitution of the United States, there is no federal government, either in the mass or in the detail. That beyond the pale and limits prescribed by that instrument, to be interpreted, not by indirect or ingenious or forced constructions, or by remote implications, but by the plain and common-sense import of its language, a language familiar to the common and general understanding, all is unwarranted assumption and wrong — a termination of all legitimate federal power. Whilst therefore I profess, as I really feel, my belief in the wisdom and purity of those who think themselves justified in what I regard as an infringement upon the terms and objects of our only charter, I am constrained to record my solemn protest against their doctrine and their act.

On these grounds I dissent from the opinion just pronounced, and think that this cause should have been remanded to the Circuit Court, with directions to dismiss it, as one over which the courts of the United States can have no jurisdiction with respect to the parties.

Mr. Justice CAMPBELL.

I concur fully in the opinion of the court denying jurisdiction to the Circuit Court to entertain this bill. The objection made in the opinion to the exercise of jurisdiction, and which is fairly presented by the record, is sufficient to dispose of the case. The

court has declined to determine any question upon the averments of the bill, in regard to the citizenship of the parties. The question is left exactly where it was when this case was presented. I state these facts, that no inference may be drawn to the contrary, and that the decision of the court may not be misunderstood.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Michigan, and was argued by counsel. On consideration whereof, it is the opinion of this court, that the Circuit Court had no jurisdiction of the case, and on that ground the bill was properly dismissed; there was, therefore, no error in the decree of said court. Whereupon it is now here ordered, adjudged, and decreed, by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.