# THE IRRIGATION LAND & IMPROVEMENT COMPANY *v.* HITCHCOCK.

EQUITY JURISDICTION; INJUNCTION; SECRETARY OF THE INTERIOR.

A suit in equity by an irrigation company to enjoin the Secretary of the Interior, his agents and servants, from committing acts of trespass upon certain lands in Arizona in carrying out the provisions of the irrigation act of Congress of June 17, 1902 (32 Stat. at L. 388, chap. 1093, U. S. Comp. Stat. Supp. 1905, p. 349), the principal question in which suit involves the title to the lands, which is alleged to be in the complainant, is not maintainable here; and the fact that the Secretary is a resident of this District, and can only be personally served with process here, does not give the court of this District jurisdiction. (Following *Columbia Nat. Sand Dredging Co.* v. *Morton,* ante, 288.)

No. 1716.  Submitted December 13, 1906.  Decided January 9, 1907.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sustaining a

demurrer to and dismissing a bill for injunction against the Secretary of the Interior.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, the Irrigation Land & Improvement Company, as the owner of certain lands situated on the Colorado river, in the county of Yuma, in the territory of Arizona, and irrigation rights and franchises acquired in connection therewith, brought this suit to enjoin the defendant, as Secretary of the Interior, from performing certain acts in execution of the irrigation act of Congress, approved June 17, 1902; namely, the erection of a great dam in the river aforesaid, and the construction of certain other works as ditches, levees, etc., in the course of which defendant's agents and subordinate officers have trespassed, and are continuing to trespass, upon the complainant's land and easements, destroying its works and irrigation system, depriving it of its customers, and thereby working it irreparable injury and damage.

The bill charges the following facts substantially:

Complainant is a corporation organized under the laws of Arizona, having an authorized capital of $1,000,000. Its objects and purposes are to build and maintain headgates, ditches, and reservoirs for the storage of water to be taken from the Colorado river and its tributaries, for the purpose of irrigation of arid lands contiguous to the Colorado river, in the Yuma valley, in Yuma county, in said territory. That through appropriation under the laws of the United States and of the territory of Arizona, and by purchase from others, complainant has acquired water rights, rights of way, and sites for canals, reservoirs, etc., and has been for more than five years the owner and in possession of the land occupied by its said canals, reservoirs, etc., and of the right to take an ample quantity of water from the Colorado river for all of the purposes of its irrigating system, and that its rights thereto have become vested. That by said appropriation and purchase complainant is entitled to have diverted from the Colorado river, in the county of Yuma,

in said territory, more than 1,000,000 inches of water, miner's measure. Complainant also has lawfully designated location of strips of land for its irrigation canals and ditches in said valley, and is the owner in fee simple of 160 acres of land, on which some of its said works are located. The several grantors of complainant had, prior to the time of transfer to it, partially developed an irrigation system, and at the time of said transfer there were over 13 miles of irrigation canals in operation, supplying and irrigating considerable areas of land in said Yuma valley. That since obtaining title, complainant has carried on and developed the said irrigation canals, and constructed new canals, laterals, dams, flumes, and aqueducts in the Yuma valley, and has completely covered a large part of said valley by the same. That during the years 1900, 1901, 1902, and 1903, it issued to landowners, and prospective land-owners of said valley water rights for the irrigation of about 14,000 acres of land, said water rights being a contract entered into with water users, whereby complainant bound itself to furnish water to the persons receiving said water rights, and during the said years, and since, it has irrigated lands in the said valley to the extent of more than 5,000 acres, completely supplying owners thereof with water for the purpose of irrigating their said lands. That, at the time complainant corporation was organized, there were 50,000 acres of arid and irrigable lands below the point of diversion of the water of the Colorado river used by complainant, and easily reached by gravity therefrom, and that its appropriations and purchases of water were made and its said canal system designed and constructed with the object and intent of irrigating said entire body of lands. That it was financially able to carry out the said enterprise, and has expended in and about the development of this system the sum of about $360,000; and its irrigation system is now of the reasonable value of $500,000. That complainant, under and in pursuance of the laws of the United States, filed in the general land office of Arizona territory its plats and maps, as required by said laws, fully setting out its entire system of canals, ditches, reservoirs, etc., as constructed and maintained by it;

and said map and plat was duly and regularly approved by the Secretary of the Interior. That complainant, during the years aforesaid, has been in the actual use and possession of all the canals, ditches, reservoirs, etc., therein described, and was and is flowing water over and through the same to the boundary line between the United States and the Republic of Mexico, and that the United States government has at all times fully and completely recognized the rights of complainant. That, having complied with the laws of the United States and of the territory of Arizona, complainant is proceeding, as rapidly as the needs of the country require, to extend and perfect its system, and will in the near future, unless interfered with by the matters and things in this bill alleged, extend and perfect its said system, so as to cover and furnish water to the entire body of land lying beneath its canals, to wit, the 50,000 acres aforesaid. That the defendant is Secretary of the Interior of the United States, and, as such, has under him a large number of agents and minor officers subject to his direction and control, and who execute his will in matters committed to him by law for execution. That on August 20, 1903, Edmund T. Perkins, one of said agents, by direction of defendant, made, pursuant to the laws of the territory of Arizona, an appropriation of 100,000 cubic feet per second of the waters of the Colorado river, in the name and for the benefit of the United States, for purpose of irrigation, the said waters to be diverted from the said river at a point on the left bank, about 22 miles above Yuma, and to be used on arid lands in the said Yuma valley; and on July 8, 1905, J. B. Lippincott, another of defendant's said agents, by his direction, made, pursuant to the said laws, another and further appropriation of the waters of the Colorado river, in the name and for the benefit of the United States, under which claim of appropriation was made of all the unappropriated waters of the Colorado river, both surface and underflow, which said water is to be used for irrigation and other purposes in and upon lands situated in Yuma county, from which the United States intends to construct and maintain a canal and system of canals, extending from the point of diversion on the

west bank of the river to the boundary line of the Republic of Mexico. That the lands described in the last of the above-mentioned appropriations are the same lands lying below the points of diversion named in the water-rights locations belonging to complainant, and that all of such lands are capable of being irrigated by its system when the same shall be extended and completed in accordance with its plans and intentions; and more than 20,000 acres of said land lie below its main canals as already completed, and are capable of now being irrigated therefrom; and more than 5,000 acres of the same are now being irrigated therefrom. That the lands described in the last-mentioned notice of appropriation are the only lands capable of being irrigated by water taken from the Colorado river at the points of diversion mentioned in either of said notices of appropriation. That said appropriations of water were made pursuant to a purpose and intention on the part of defendant to build and operate, in the name and at the expense of the United States, an irrigation system which should compete with that belonging to complainant in the furnishing of waters to the owners and prospective owners of the land mentioned in the said last-described notice of appropriation. That, pursuant to said purpose, the agents of defendant, by his direction, have entered upon and carried on during the last three years an active campaign to induce the water users and prospective water users in the Yuma valley, all of whom settled in the said valley as the result of the enterprise of your orator, and most of whom have taken and paid for the right to receive water from your orator's system, to sign an agreement to take water exclusively from the government system; and that many of said water users who had intended to patronize complainant's system, and had purchased the right to receive water from it, have, to its great damage and injury, been induced by the representation of defendant's agents to sign agreements to take water exclusively from the government. That, pursuant to his said purpose and intention, the defendant has caused plans to be drawn for an irrigation system to water the said lands in the Yuma valley, which plans include dams in the Colorado river, reservoirs for

the storage of water, headgates to take water from the said river at the point of diversion, and main canals, ditches, and laterals for distribution of the water over said lands, and is now causing said system to be built and constructed with money drawn from the Treasury of the United States. That one of the dams across the Colorado river, now being so built and constructed, is situated in the said river above the point where your orator diverts and has the right to divert its water from the said river. That said dam is intended and will have the effect of creating a settling basin for sediment carried by the waters of the said river, and is provided with sluice gates, which, when open at stated times and the sediment washed out from the same into the channels of the river, will cause the scouring of the said river and reduce it below the intakes of the canals of complainant; and the said waters, when allowed to flow through the sluice gates, will carry an enormous excess of sediment which will flow into the headgates and canals of complainant, and cause them to fill up and to become unserviceable except at a ruinous expense. The said dam is a necessary part of the system designed by the defendant, and the same cannot be successfully carried on without it; and the building of said dam, and its maintenance and operation, will destroy complainant's entire irrigating system, and constitute a taking of its property within the meaning of the Constitution of the United States. That the plans now being carried out provide for a main canal on higher ground than the canals of complainant, entirely encircling and enclosing the latter, from which main canal it is proposed to extend subsidiary canals and laterals to the lower ground now occupied by complainant's canals and laterals. That the subsidiary canals and laterals will cut and destroy the canals and laterals of complainant. That the waste water from the system of defendant will have no place to flow except through the canals and laterals of complainant, and said waste water, not being subject to the control of complainant, will interfere with its system and practically render the same valueless. That the defendant's plans aforesaid provide for a levee to be built along the east bank of the Colorado river, at

points above and below where complainant takes its water from said river, and where alone it has the right to take said water, said levee being intended both as protection against overflow in periods of high water, and as a structure to carry an aqueduct or canal. Said levee is a necessary part of said system, and defendant by his agents is now causing the same to be constructed, and said work is now reaching the neighborhood of the headgate of complainant's principal canal, which is constructed on land owned by complainant in fee simple; and if said headgate be built with openings or gaps at the headgates maintained by complainant, the effect will be to concentrate the force of the volume of the waters at periods of high water at said headgates, and the force of the same will be such as to render it impossible to maintain the headgates except at a ruinous expense. That the defendant, through his agents and servants, has entered by force and violence, and against complainant's express will and command, the land owned by complainant in fee simple, on which the headgates of its principal canal is located, and is now proceeding to build the said levee thereon. That complainant has heretofore built a levee about 3 miles long on the east bank of the river above its first intake, at great expense, for the purpose of protecting its own system and works, to which levee it has title from the owners of the land on which it stands, and complainant alleges that the defendant, his agents and servants, have taken possession of said levee with force and violence, and are proceeding to utilize the same as a part of the levee being built by the defendant. That all these acts have been done and are being done without any authority or tender of compensation to complainant, and are arbitrary and unlawful and violative of the provisions of the Federal Constitution intended to secure the rights of person and property, and they have been done by the defendant under color of and by virtue of the power of his official position. That it is the purpose and intention of the defendant, his agents and servants, to maintain possession of complainant's property, and to take possession of still other parts not yet entered upon, and to build the said levee over and across the same, and prevent complain-

ant from obtaining any water from the Colorado river for its irrigating system. That, if the said irrigation system of defendant be built as designed and intended, it will introduce competition between that system and complainant's, which will be injurious and detrimental, if not ruinous, to complainant. That the defendant is constructing and causing the same to be constructed in the name of the United States, with the money of the United States, but without the authority of any valid law, and said action is an infringement of complainant's property rights, and should be enjoined and restrained. That the defendant has offered to complainant the sum of $45,000 for all of its property and rights in said irrigation system, which sum is less than one eighth of its actual cost, and less than one eleventh of its actual value. That the act of Congress approved June 17, 1902, under which defendant is engaged in the operations aforesaid, is unconstitutional and void. That complainant is powerless to resist the illegal and oppressive action and threatened action of defendant and his agents, which said action has damaged complainant, by the depreciation of its property and diminution of its revenues, more than $50,000, and is inflicting continuous and increasing damage as the scheme and plans of the defendant and his agents are developed and carried into effect; and when fully developed and carried into effect the said scheme and plans will have destroyed complainant's property and rendered it bankrupt; and that it has no remedy at law for the injury inflicted on it, or, if any remedy, the same will be partial, inadequate, and incomplete, and the interposition of a court of equity is essential to prevent irreparable injury and a multiplicity of suits.

The prayers of the bill are for an injunction to restrain the defendant, his agents and servants, from further prosecuting and completing said irrigating system, and from doing any act or thing in connection with the plans for an irrigation system now under construction which will have the effect of interfering with, destroying, or in any wise impairing the irrigating system, or any part thereof, now maintained by complainant; and that they be perpetually enjoined and restrained from con-

tinuing to trespass on the lands and property of complainant, or from committing other and further trespass on any other of the lands and property of complainant. Also, that an account be taken of the injury and damage done to complainant up to the present time by reason of the illegal acts of the defendant, his agents and servants, as alleged, and that a decree be rendered therefor.

The defendant entered a demurrer, the first ground of which is that it appears from the averments that the matters complained of are not within the jurisdiction of the supreme court of the District of Columbia, but are cognizable only by the court of the first judicial district of the territory of Arizona, held in and for the county of Yuma.

The cause was submitted on this ground of demurrer, which was sustained, and the bill dismissed.

From that decree this appeal has been taken.

*Mr. George H. Patrick, Mr. George Turner,* and *Messrs. Happy & Hindman,* for the appellant:

1. When the bill of complaint is considered properly, it will be seen that there is no ground, from any point of view, for the contention that the action must be brought in Arizona. The case is not in any sense local. It is not an action for trespass, pure and simple, like that in *Northern Indiana R. Co.* v. *Michigan C. R. Co.* 15 How. 232. The wrongs alleged against the defendant are acts conceived and directed here in the District of Columbia, and the relief sought is against further action in this jurisdiction. The result of the defendant's wrongful action, moreover, even when that action has affected and set in motion his agents out in Arizona, is not the commission of trespass against the complainant, except in the single instance of the building of the levees on complainant's land. It is, on the contrary, to cause the doing of things which, while they indirectly affect complainant to its injury, do not touch any physical property belonging to it. A cursory reading of the bill of complaint will show this to be true.

In view of the character of the case made in the bill, we submit that it is governed by *Phelps* v. *McDonald,* 99 U. S. 298, and other similar cases, rather than the single case in 15 Howard, relied on so strongly by defendant. It is to be noted that the case in 15 Howard stands single and alone, and that, in a sense, what is said on the question involved here, is *dictum.* Nevertheless, as applied to a bill alleging nothing but a trespass or nuisance, we do not question its correctness. Such a bill would undoubtedly make a case local in character. But where there are other elements,—such, for instance, as the official character of the defendant, and the doing of the wrongful acts under color of an invalid law and contrary to the constitutional rights of the plaintiff, and especially where the injurious acts affect the plaintiff indirectly, and do not necessarily touch his actual physical property,—the action is not local in character, and may be brought wherever the defendant may be found. See *Massie* v. *Watts,* 6 Cranch, 148; *Watkins* v. *Holman,* 16 Pet. 25; *Hart* v. *Sansom,* 110 U. S. 155; *Cole* v. *Cunningham,* 133 U. S. 107; *Carpenter* v. *Strange,* 141 U. S. 106; *Briggs* v. *French,* 1 Sumn. 504; *Lyman* v. *Lyman,* 2 Paine, 11; *Tardy* v. *Morgan,* 3 McLean, 358; *Montgomery* v. *United States,* 36 Fed. 4; *Miller* v. *Lux* v. *Rickey,* 127 Fed. 573.

2. The present action is not a suit against the United States. *Davis* v. *Gray,* 9 Wall. 220; *Hagard* v. *Southern,* 117 U. S. 52; *Re Ayers,* 123 U. S. 485; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Tyndall* v. *Wesley,* 167 U. S. 204; *Scranton* v. *Wheeler,* 117 U. S. 140.

*Mr. Frank L. Campbell,* Assistant Attorney General, Interior Department, and *Mr. Joseph R. Webster,* Assistant Attorney, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

We are of the opinion that the demurrer was rightly sustained.

The gravamen of the suit is contained in the allegations of continued acts of destructive trespass upon lands, and easements therein, situated in the territory of Arizona; and the principal question involved is the title thereto, which is alleged to be in the complainant. All other questions are incidental and of minor importance. The sole ground of jurisdiction claimed for the courts of this District is that the defendant, the Secretary of the Interior, is a resident thereof, and can only be personally served with process therein. The controversy does not arise out of any contract, nor does it involve any matter of express or implied trust; and no special form of relief is prayed, through compulsion of the defendant, that would warrant the exercise of the extraordinary jurisdiction of equity *in personam*, notwithstanding the title to land in another jurisdiction might be incidentally affected thereby.

The case made by the bill is on all fours with that of *Northern Indiana R. Co.* v. *Michigan C. R. Co.* 15 How. 233. 14 L. ed. 674. The complainant in that case, a corporation of the State of Indiana, brought the suit in the United States circuit court for the district of Michigan against a corporation of the State of Michigan, whose domicil was in said district. Complainant claimed the title to certain lands in the State of Indiana, and franchises connected therewith, and sought an injunction to restrain the defendant from entering upon said lands, grading and constructing a railroad thereon, and preventing the complainant from constructing its railway thereon, in violation of its right of possession and property. The decree of the court below dismissing the bill for want of jurisdiction was affirmed. In delivering the opinion of the court, Mr. Justice M'Lean used the following language, that is directly applicable to the facts of this case:

"In the investigation of this case, rights to real estate must be examined, which have been acquired by purchase, or by a summary proceeding under the laws of Indiana. This applies, especially, to the ground on which the complainant's road is constructed, and to other lands which have been obtained for the erection of facilities connected with their road. And, in

addition to this, the chartered rights claimed by the defendants, and the right asserted by them to construct their road as they have done, crossing the complainants' road and running parallel to it, must also be investigated. Locality is connected with every claim set up by the complainants, and with every wrong charged against the defendants. In the course of such an investigation, it may be necessary to direct an issue to try the title of the parties, or to assess the damages complained of in the bill. It will readily be admitted that no action at law could be sustained in the district of Michigan, on such ground, for injuries done in Indiana. No action of ejectment, or for trespass on real property, could have a more decidedly local character than the appropriate remedy for the injuries complained of. And is this character changed by a bill in chancery? By such a procedure we acquire jurisdiction of the defendants, but, the subject-matter being local, it cannot be reached by a chancery jurisdiction, exercised in the State of Michigan."

In an analogous case, recently decided, we had occasion to pass upon this question of jurisdiction; and upon an examination of the later decisions of the same court our conclusion was that the doctrine of the case cited had not been impaired, but had been often reaffirmed. *Columbia Nat. Sand Dredging Co. v. Morton,* ante, p. 288.

Without further discussion, we are content to rest our judgment on the opinion delivered in that case.

The decree will be affirmed, with costs.          *Affirmed.*